1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

7

8    **Armando Adame,**
     Petitioner

9    -vs-
     **Charles L. Ryan, et al.,**

10   Respondents

CV-09-1341-PHX-JWS (JRI)

**REPORT & RECOMMENDATION
On Petition for Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2254**

11

## I. MATTER UNDER CONSIDERATION

12

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye,

13

Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 22,

14

2009 (Doc. 1). On February 8, 2010 Respondents filed their Response (Doc. 13). Petitioner

15

filed a Reply on April 5, 2010 (Doc. 18).

16

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned

17

makes the following proposed findings of fact, report, and recommendation pursuant to Rule

18

8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28

19

U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

20

21

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

22

### A. FACTUAL BACKGROUND

23

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized

24

the factual background as follows:

25

> At various times and for various durations of time, some of which
> overlapped, defendant, Hector, and David were involved in
> relationships with Shawna. Shawna and David had two children. There
> was conflicting evidence as to whether defendant was the biological
> father of Shawna's third child.

26
27

> On the date of the incident, Shawna and defendant argued as

28

they spoke to each other by telephone. During this argument, defendant learned that Hector was with Shawna at her apartment.  Defendant did not want other men at Shawna's apartment when he was not present. David was also present, as were two of his children, a woman named Carley, and the woman who helped raise Shawna, Michelle. After the conversation ended, Shawna warned everyone in the apartment that defendant was angry and that he was on his way to the apartment. Hector and Carley left the apartment. As they drove away they passed defendant on his way to the apartment.  Hector and Carley decided to return to the apartment.

Upon his arrival, defendant encountered Shawna at the front door of their apartment where they continued their argument. As they argued, Hector arrived back at the apartment. During the  argument, David tried to get Shawna away from defendant in order to  avoid any further conflict. As David attempted to do so, defendant said "don't touch her," reached over Shawna and struck David in the face. Defendant then walked towards Hector's vehicle. Hector was still sitting in the vehicle. As he approached Hector's vehicle, defendant removed a handgun from his waistband, pointed it at the vehicle, and fired into the door. A few moments later, defendant fired a shot at David's parked car. Defendant left the apartment complex before police arrived, as did Hector and David.

(Exhibit F, Mem. Dec. 6/14/05 at 2-3.) (Exhibits to the Answer, Doc. 13 are referenced herein as "Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

Petitioner was indicted on one count of weapons misconduct and one count of unlawful discharge of a firearm.  (Exhibit A, Indictment.)  The state alleged three historical priors.  (Exhibit A, Alleg. Hist. Priors.)  Petitioner proceeded through four days of trial (Exhibit B, M.E. 4/21/03 thru 4/24/03), and was convicted on both counts, with the jury finding that the Unlawful Discharge was a "dangerous offense." (Exhibit A, Verdicts.)

During the course of sentencing proceedings, the trial court ordered competency evaluations of Petitioner .  (Exhibit B, M.E. 11/14/03, M.E. 1/9/04.)  At the sentencing hearing, the trial court found that "based on the psychological reports received, the Court finds no basis for any further Rule 11 proceedings."   (Exhibit C, M.E. 4/22/04 at 1.) Petitioner was sentenced to concurrent sentences of 10 years on the weapons misconduct count and 2 and 1/4 years on the unlawful discharge.  (*Id.* at 2.)

/ /

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal through counsel, rasing the following arguments:

1.  Whether allegations of other bad acts and other crimes were inadmissible, irrelevant and unfairly prejudicial? Whether the alleged other bad acts made the entire trial unfair and constitute fundamental error?
2.  Whether failure to give a limiting instruction infected the jury's consideration of the evidence?
3.  Whether prosecutorial misconduct in repeatedly raising admissible bad acts or crimes requires reversal?

(Exhibit D, Opening Brief at 27.)   The Arizona Court of Appeals affirmed Petitioner's conviction.  (Exhibit F, Mem. Dec. 6/14/05 at 16.)   Petitioner sought review by the Arizona Supreme Court on essentially the same grounds (Exhibit G), which was summarily denied on December 29, 2005.  (Petition, Doc. 1-1 at 6, Order 12/29/5.)

## D.  FIRST PROCEEDINGS ON POST-CONVICTION RELIEF

On January 23, 2006, Petitioner filed a Notice of Post-Conviction Relief (Exhibit I). On July 24, 2006, he file a *pro per* Petition for Post-Conviction Relief (Exhibit J), arguing:

(a)   trial counsel was ineffective for the following reasons: (1) never visiting with Petitioner, (2) failing to object to "other act" evidence admitted at trial, (3) failing to request a limiting instruction at trial, (4) failing to interview or call eyewitnesses reflected on the 911 transcripts;

(b)   the  911 transcripts constituted newly discovered evidence "that would have refuted testimony given by state's witnesses ; and

(c)   claims of prosecutorial misconduct; and

(d)   the claim that the trial court should have assigned a new doctor to determine his competency for trial.

The PCR court found: the prosecutorial misconduct claim was precluded because it was raised on direct appeal; the 911 tapes were not newly discovered evidence because they had been disclosed at trial; and that the ineffective assistance claims were without merit. Accordingly, the petition was summarily dismissed without an evidentiary hearing. (Exhibit

M, M.E. 11/15/06.)

Petitioner filed a Motion for Rehearing (Exhibit N).[1] The Court appointed advisory counsel and granted an evidentiary hearing (Exhibit B, M.E. 2/26/07), which was held on April 27, 2007 (Exhibit Q R.T. 4/27/07). The PCR court concluded that the claims of ineffective assistance were without merit, and summarily dismissed the petition. (Exhibit R, M.E. 6/19/07.)

Petitioner then filed a Petition for Review (Exhibit S),[2] seeking relief on the basis of the ineffective assistance of his PCR counsel, an improper investigation by officers and prosecutors, and ineffective assistance of trial counsel. (*Id.* at 6.) The Arizona Court of Appeals summarily denied review. (Exhibit U, Order 1/21/09.)

In the Petition, Petitioner alleges he appealed his PCR proceeding to the Arizona Supreme Court, but provides no evidence of that appeal. (Petition, Doc. 1 at 5.) The record provided by Respondents reflects no such appeal.

**E. SECOND PROCEEDINGS ON POST-CONVICTION RELIEF**

During the pendency of his first PCR proceeding, Petitioner filed a second PCR Notice (Exhibit O), asserting ineffective assistance of PCR counsel. The PCR court summarily dismissed, finding that ineffective assistance of PCR counsel was not a cognizable claim. (Exhibit P, M.E. 1/10/07.) There is no evidence that Petitioner sought review on this Petition.

**F. PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 22, 2009 (Doc. 1). Petitioner's Petition asserts the following three grounds for relief:

---

[1] Petitioner casts this filing as his second PCR proceeding. (Petition, Doc. 1 at 4.)

[2] Petitioner casts this as his third PCR petition. (Petition, Doc. 1 at 5.)

(1)     "Witness recanting of testimony - no police reports or interviews were gathered by counsel to lodge a defense for Petitioner. Due process rights violated and protected under Amendments VI & XIV U.S. and Arizona Constitution";

(2)     "Counsel's failure to provide Petitioner with an adequate defense - failure of counsel to argue key points, investigate and interview witnesses. Failure to object at key points of trial and hearings"; and

(3)     "Issue of competency to stand trial [-] a mitigation specialist brought this issue to the court[']s attention."

(Petition, Doc. 1 at 6-8.)

**Answer** - Respondents filed their Answer (Doc. 13) on February 8, 2010. As to **Ground One** (Due Process), Respondents argue that to the extent Petitioner intends to assert a claim based on witness recantation, it is unsupported and without merit, and is procedurally defaulted. To the extent that Petitioner intends to assert a claim of ineffective assistance of counsel, it is without merit. To the extent that Petitioner intends to assert a free standing claim of actual innocence, the claim is not cognizable on habeas, and is in any event without merit. (*Id.* at 12-15.)

As to **Ground Two** (Ineffective Assistance), Respondents characterize the claim as complaining that counsel was ineffective because of:

1.    No interviews of arresting officers and investigators.
2.    Lack of preparation before and during trial.
3.    Petitioner was never contacted or visited by counsel at the jail to prepare an adequate defense for trial.
4.    Counsel allowed the State prosecution throughout to attack Petitioner's character and falsify the facts.

(Answer, Doc. 13 at 16.) Respondents concede the claims are properly exhausted, but contend they are without merit. (*Id.* at 16-20.)

As to **Ground Three** (Competency), Respondents contend that this claim was dismissed by the PCR Court as waived by failure to raise it on direct appeal pursuant to an independent and adequate state ground, and thus is procedurally barred from habeas review.

1  (Answer, Doc. 13 at 20-21.)  Respondents further argue that the claim is without merit. (*Id.*

2  at 21-26.)

3      **Reply** - On April 5, 2010, Petitioner filed a Reply (Doc. 18).  Petitioner simply asks

4  for a ruling in his favor, citing the injustices at trial and the length of his sentnece.

6  ### III. APPLICATION OF LAW TO FACTS

7  ### A.  EXHAUSTION & PROCEDURAL DEFAULT

8      Respondents argue that Petitioner failed to properly exhaust his state remedies on the

9  portions of Ground One based upon recantation of a witness.  Respondent argues that this

10  claims is now procedurally defaulted, and thus must be dismissed with prejudice.

12  **1.  Exhaustion Requirement**

13      Generally, a federal court has authority to review a state prisoner's claims only if

14  available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)

15  (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28

16  U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to

17  show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104

18  (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

19      **a.  Proper Proceeding**

20      Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

21  raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-

22  conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir.

23  1994).   Only one of these avenues of relief must be exhausted before bringing a habeas

24  petition in federal court.   This is true even where alternative avenues of reviewing

25  constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211

26  (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

27  1059 (1989).

28  / /

**b.  Proper Forum**

Ordinarily, a petitioner has not satisfied the exhaustion requirement unless he has fairly presented his claim to the highest state court.  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).  In *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999), the Ninth Circuit held that under Arizona law, absent a death penalty or life sentence, Arizona state prisoners have exhausted claims presented in habeas petitions if they have been ruled upon by the Arizona Court of Appeals.

**d.  Fair Presentment**

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented."  That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).  A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam).

On the other hand, both the federal and state courts are tasked with enforcement of the federal constitution.  *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  Thus, "a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Id.*

**e.  Application to Petitioner's Claims**

In his Ground One, Petitioner argues *inter alia* that he was denied his due process

rights because a witness recanted.[3]  Petitioner claims that the issue was raised on direct appeal in all of his PCR proceedings.  (Petition, Doc. 1 at 6.)

No such claim was raised on direct appeal.  Instead, Petitioner's claims were limited to the other bad acts and other crimes evidence, and related prosecutorial misconduct, and a failure to give a limiting instruction.  (Exhibit D, Opening Brief at 27.)

No such claim was raised in Petitioner's sole foray to the Arizona Court of Appeals in his PCR proceedings.  (Exhibit S, Petition for Review.)   The closest Petitioner came was his allegations that there was newly discovered evidence in the form of new witnesses who should have been presented at trial.  (*Id.* at 2-3.)

Accordingly, the undersigned finds that Petitioner has failed to exhaust his state remedies on the witness recantation portion of his Ground One.


## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Two Arizona rules commonly bar delayed presentations of claims: Arizona's waiver bar, set out in Ariz. R. Crim. Proc. 32.2(a), and its timeliness bar in Ariz. R. Crim. P.  32.4.

---

[3]  Petitioner makes no reference to any particular recanting witness, and proffers no evidence of a recantation.  The Arizona Court of Appeals observed that Petitioner's girlfriend, Shawna, told police at the scene that Petitioner was the shooter.  At trial, she recanted and claimed it was someone named Cesar.  (Exhibit F, Mem. Dec. 6/14/05 at 3.) Defense counsel testified that he interviewed Shawna prior to trial and recorded her recantations.  (Exhibit Q, R.T. 4/27/07 at 25, 27.)

1  (Answer, Doc. 16 at 14-15.)

2       **Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct

3  appeal expires twenty days after entry of the judgment and sentence.  The Arizona Rules of

4  Criminal Procedure do not provide for a successive direct appeal.  *See generally*

5  Ariz.R.Crim.P. 31.   Accordingly, direct appeal is no longer available for review of

6  Petitioner's unexhausted claims.

7       **Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a

8  subsequent PCR Petition.

9       Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim

10 may not ordinarily be brought in a petition for post conviction relief that  "has been waived

11 at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).

12 Under this rule,  some claims may be deemed waived if the State simply shows "that the

13 defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding."

14 *Stewart v. Smith*,  202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P.

15 32.2, Comments).  For others of "sufficient constitutional magnitude," the State "must show

16 that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the

17 ground or denial of a right."  *Id.*  That requirement is limited to those constitutional rights

18 "that can only be waived by a defendant personally."  *State v. Swoopes*  216 Ariz. 390, 399,

19 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v.*

20 *Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver

21 of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the

22 Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at

23 450, 46 P.3d at 1071.[4]  Petitioner's unexhausted claim does not fit within those categories.

24

---

25       [4] Some other types of claims addressed by the Arizona Courts in resolving the type
26 of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz.
   at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission),
27 *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by
   omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy
28 (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence

1    <u>Timeliness Bar</u> - Even if not barred by waiver, Petitioner would now be barred from

2    raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for

3    post-conviction relief (other than those which are "of-right") be filed "within ninety days

4    after the entry of judgment and sentence or within thirty days after the issuance of the order

5    and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128,

6    912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition

7    of pleading defendant deemed direct appeal for purposes of the rule).   That time has long

8    since passed.

9    <u>Exceptions</u> - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the

10    category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  *See* Ariz. R. Crim. P.

11    32.2(b) (exceptions to waiver bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).

12    Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor,

13    does it appears that such exceptions would apply.  The rule defines the excepted claims as

14    follows:

15            d. The person is being held in custody after the sentence imposed has
                expired;
16            e. Newly  discovered  material  facts  probably  exist  and  such  facts
                probably  would  have  changed  the  verdict  or  sentence.  Newly
17            discovered material facts exist if:
                (1) The newly discovered material facts were discovered after the trial.
18            (2) The defendant exercised due diligence in securing the newly
                discovered material facts.
19            (3) The newly discovered material facts are not merely cumulative or
                used solely for impeachment, unless the impeachment evidence
20            substantially undermines testimony which was of critical significance
                at trial such that the evidence probably would have changed the verdict
21            or sentence.
                f. The defendant's failure to file a notice of post-conviction relief of-
22            right or notice of appeal within the prescribed time was without fault on
                the defendant's part; or
23            g. There has been a significant change in the law that if determined to
                apply to defendant's case would probably overturn the defendant's
24            conviction or sentence; or
                h. The defendant demonstrates by clear and convincing evidence that
25            the facts underlying the claim would be sufficient to establish that no
                reasonable fact-finder would have found defendant guilty of the
26            underlying offense beyond a reasonable doubt, or that the court would

27

28    (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of
       interest (waived by omission), *State v. Westmiller*,  2008 WL 2651659 (App. 2008).

1    not have imposed the death penalty.

2    Ariz.R.Crim.P. 32.1.

3    Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona

4    prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim

5    is based on "newly discovered evidence" that has previously been presented to the state

6    courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.

7    In the absence of any specific evidence of recantation, this Court cannot find that this

8    exception would apply.   Paragraph (f) has no application where the petitioner filed a timely

9    notice of appeal.  Paragraph (g) has no application because Petitioner has not asserted a

10   change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims

11   of actual innocence, has no application to Petitioner's simple claim of recanted testimony in

12   the absence of an assertion of actual innocence.  *See State v. Swoopes*, 216 Ariz. 390, 404,

13   166 P.3d 945, 959 (App. 2007) (32.1(h) did not apply where petitioner had " not established

14   that trial error ...amounts to a claim of actual innocence").

15   <u>Summary</u> - Accordingly, the undersigned must conclude that review through

16   Arizona's direct appeal and post-conviction relief process is no longer possible for

17   Petitioner's unexhausted claims.

18   **Summary re Procedural Default** - Petitioner failed to exhaust his federal claims in

19   Ground One based upon recantation by a witness, and is now procedurally barred from doing

20   so.  Accordingly, this unexhausted claims is procedurally defaulted, and absent a showing

21   of cause and prejudice or actual innocence, must be dismissed with prejudice.

22

23   **B.  INDEPENDENT AND ADEQUATE STATE GROUNDS**

24   Respondents argue that Petitioner's claims of incompetency in Ground Three were

25   dismissed by the PCR Court as waived by failure to raise it on direct appeal pursuant to an

26   independent and adequate state ground, and thus is procedurally barred from habeas review.

27   (Answer, Doc. 13 at 20-21.)

28   "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be

unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -,  2011 WL 611627, 6 (2011).

"[T]he mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotations omitted).  Where there is no reason given by the state court for its decision, and no lower or other reasoned decision to look through to, the habeas court must ascertain for itself if the unreasoned judgment rests on independent and adequate state grounds, taking into consideration such things as the form of the "post card" denial, the arguments submitted in opposition to the claims, and the state court's knowledge of the effect of an unreasoned decision. *Hunter v. Aispuro*, 982 F.2d 344 (9th Cir. 1992).

Respondents argue that the PCR court dismissed this claim as barred under Arizona Rule of Criminal Procedure 32.2(a)(3).  However, the PCR court did not specifically address Petitioner's claim of incompetency.  Rather, the court simply inserted in the paragraph concerning Petitioner's claim of prosecutorial misconduct, without connection to any specific claim, an isolated reference to the Rule 32.32(a)(3).

> The Court finds the claim of prosecutorial misconduct was raised on appeal and may not be raised in a post-conviction proceeding under this rule. Rule 32.2(a)(2), Arizona Rules of Criminal Procedure. Claims not specifically raised on direct appeal are procedurally barred in this proceeding. Rule 32.2(A)(3), Arizona Rules of Criminal Procedure.

(Exhibit M, M.E. 11/15/06 at 1.)

Here, there is no connection in the PCR court's Order between its recitation of Rule 32.2(a)(3) and the incompetency claim.  Thus, this Court must  ascertain for itself whether the rejection of the claim was on independent and adequate state grounds.

On the other hand, the State argued in response to the PCR Petition that the incompetency claim was procedurally barred:

1           Similarly, claims of incompetence at trial must be raised on direct
2           appeal. Because Petitioner did not raise that claim in his direct appeal,
            it is procedurally barred in this proceeding. Ariz. R. Crim. P. 32.2(a)(3).

3  (Exhibit K, PCR Resp. at 4.)   Respondents did not address the claim on its merits. (*Id.*

4  generally.)   No other claim was argued as being procedurally barred under Rule 32.2.(a)(3).

5  In his PCR Reply, Petitioner simply argued that he had raised the claim on direct appeal, but

6  only cited the procedural recitation in his Opening Brief on direct appeal, and pointed to no

7  argument of the claim.  (Exhibit L, PCR Reply at 2 (citing Exhibit D, Opening Brief at 1-2.)

8        In the Petitioner for Review proceedings, Petitioner argued that the competency issued

9  had not been ruled on by the PCR court.  (Exhibit S, PFR at 2.)  The state again argued the

10  incompetency claim was procedurally barred under Rule 32.2(a)(3).  (Exhibit T, PFR Resp.

11  at 5.)[5]

12        Under these circumstances, the undersigned must conclude that the trial court's

13  reference to Rule 32.2(a)(3) was an adoption of the state's argument that Petitioner's

14  incompetency claim was procedurally barred under that rule, and that the dismissal of the

15  PCR Petition, insofar as it encompassed the incompetency claim, was on that procedural

16  ground.  Accordingly, the undersigned finds that this claim was disposed of by the PCR

17  Court as procedurally barred under Rule 32.2(a)(3).

18        Federal habeas review of a defaulted federal claim is precluded only when the state

19  court has disposed of the claim on a procedural ground "that is both 'independent' of the

20  merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*,

21  489 U.S. 255, 260 (1989).  *But see Stewart v. Smith*, 536 U.S. 856, 860 (2002) ("assum[ing]"

22  independence standard applies on habeas).   A state's application of the bar is not adequate

23  unless it is " 'strictly or regularly followed.' " *Johnson v. Mississippi*, 486 U.S. 578 (1988)

24  (citation omitted) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982))

25        Rule 32.2(a) has been found to be independent of federal law.  *See Stewart v. Smith*,

26

---

27        [5] The Arizona Court of Appeals issued a summary denial (Exhibit U, Order 1/21/09)
of the Petition for Review..  Pursuant to *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), this
28  court looks through that order to the PCR court's order.

1  536 U.S. 856, 860 (2002).

2      In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003),  the Ninth Circuit addressed the

3  burden of proving the adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and
> adequate state procedural ground as an affirmative defense, the burden
> to place that defense in issue shifts to the petitioner. The petitioner may
> satisfy this burden by asserting specific factual allegations that
> demonstrate the inadequacy of the state procedure, including citation
> to authority demonstrating inconsistent application of the rule. Once
> having done so, however, the ultimate burden is the state's.

8  *Bennett*, 322 F.3d at 586. Petitioner proffers nothing to suggest that Rule 32.2(a)(3) is not

9  adequate to bar federal habeas review.

10     **Summary re Procedural Bar** - Based upon the foregoing, the undersigned concludes

11 that Petitioner's claims in Ground Three (Incompetency) were disposed of on an independent

12 and adequate state procedural bar sufficient to bar habeas review.

13

14 **C.  CAUSE AND PREJUDICE**

15     The undersigned has determined herein above that Petitioner has procedurally

16 defaulted the portion of his Ground One based on witness recantation.  In addition, the

17 undersigned has concluded that Petitioner's claims in Ground Three (Competence) were

18 disposed of on independent and adequate state grounds.

19     If a habeas petitioner has procedurally defaulted on a claim, or it has been

20 procedurally barred on independent and adequate state grounds, he may not obtain federal

21 habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse

22 the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Although both "cause" and "prejudice"

23 must be shown to excuse a procedural default, a court need not examine the existence of

24 prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43

25 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).

26     "Cause" is the legitimate excuse for the default. *Thomas*, 945 F.2d at 1123.  Petitioner

27 offers nothing to establish cause to excuse his procedural default or procedural bar.

28     **Actual Innocence** - The standard for "cause and prejudice" is one of discretion

1   intended to be flexible and yielding to exceptional circumstances.  *Hughes v. Idaho State*

2   *Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish

3   cause may be excused "in an extraordinary case, where a constitutional violation has

4   probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477

5   U.S. 478, 496 (1986) (emphasis added).

6       Petitioner makes no pretension of establishing his actual innocence as an excuse for

7   a procedural default.  To the extent that Petitioner raises actual innocence as a substantive

8   claim, the Court finds it to be without merit, as discussed hereinafter.

9       **Summary re Procedurally Defaulted & Procedurally Barred Claims** - Petitioner

10  has failed to show cause to excuse his procedural default and/or the procedural bar, and has

11  failed to show his actual innocence to avoid them  Accordingly, the portion of Petitioner's

12  Ground One founded on recantation of a witness, and his Ground Three (Competency) must

13  be dismissed with prejudice.

14

15  **D.  MERITS OF GROUND ONE (DUE PROCESS/ACTUAL INNOCENCE)**

16      Respondents characterize Petitioner's Ground One as setting out: (1) the recantation

17  claim disposed of herein above as procedurally defaulted; (2)  a duplicate of his ineffective

18  assistance claim in Ground Two based upon uncalled witnesses; and (3) a freestanding claim

19  of actual innocence.[6]  (Answer, Doc. 13 at 13-14.)  Petitioner does not oppose that

20  characterization.  The undersigned adopts it.

21      As noted, the portion of this claim related to recantation is procedurally defaulted. The

22  portion concerning ineffective assistance is discussed in connection with Ground Two.

23      The remaining claim is an assertion of actual innocence.

24          Claims of actual innocence based on newly discovered evidence have

25  _____

26      [6]  Petitioner's Ground One contains a string of unrelated allegations, including
    assertions that the prosecution failed to prove possession of a weapon and prior bad acts,

27  judicial misconduct resulted from the judge failing to take action, and the absence of a jury
    instruction precluding consideration of non-relevant information. (Petition, Doc. 1 at 6.)

28  None of these conclusory allegations are supported by any specific factual references.

1
2
3

never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding...This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact.

4   *Herrera v. Collins,* 506 U.S. 390, 400-401 (1993).  Thus, there is no recognized authority for

5   habeas relief on a free-standing claim of actual innocence.

6          Even if such a claim were cognizable, Petitioner has failed to make one out. "[T]o be

7   entitled to relief, a habeas petitioner asserting a freestanding innocence claim must go beyond

8   demonstrating doubt about his guilt, and must affirmatively prove that he is probably

9   innocent." *Carriger v. Stewart,* 132 F.3d 463, 476 (9th Cir. 1997).  A finding of "actual

10  innocence" is not to be based upon a finding that insufficient evidence to support the charge

11  was presented at trial, but rather upon affirmative evidence of innocence.  *See U.S. v.*

12  *Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a  bank robbery

13  case, without evidence that insurance did not exist, not sufficient to establish actual

14  innocence to excuse procedural default).

15         Here, with one exception, Plaintiff points to no affirmative evidence of his innocence.

16  At best, he makes vague references to limited evidence on some issues (*e.g.* possession of

17  a gun, prior bad acts).

18         Plaintiff does provide a letter from Teresa Trujillo, a 911 caller, in which she claims

19  that she observed the shooting in October, 2002, and when shown a picture of Petitioner by

20  his sister in April, 2007 she did not recognize him as the shooter.  (Petition, Exhibits, Doc.

21  1-1 at physical page 1.)

22         In contrast, the state had eyewitness testimony from several other witnesses who

23  identified Petitioner, as well as the police statements by Petitioner's girlfriend (albeit

24  recanted) that Petitioner was the shooter. (Exhibit Q, R.T. 4/27/07 at 32-33.) Comparatively,

25  a failure to identify Petitioner from a picture some four and a half years after the fact would

26  not create a probability of actual innocence.

27         Accordingly, Petitioner has failed to establish his actual innocence, and this portion

28  of his Ground One is without merit.

**E.  MERITS OF GROUND TWO: INEFFECTIVE ASSISTANCE OF COUNSEL**

Respondents characterize Petitioner's Ground Two as reurging from his PCR proceedings a claim of ineffective assistance of counsel founded upon allegations that trail counsel was ineffective for failing to :

(1)    interview arresting officers and investigators;

(2)    prepare before and during trial;

(3)    contact or visit Petitioner at the jail and thereby prepare an adequate defense;

(4)    challenge the prosecution's attacks on Petitioner's character and falsification of the facts.  (Answer, Doc. 13 at 16.)

Petitioner does not oppose that characterization of his claims.  (*See generally* Reply, Doc. 18.)  The undersigned adopts it.


**1.  Standards for Ineffective Assistance of Counsel Claims**

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, a petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88, 694. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.*  at 697.

Moreover, to succeed on his claims in this habeas proceeding, Petitioner bears an extremely heavy burden.  He must establish both that the state court got it wrong on prejudice and that it got it wrong on deficient performance.  Further, Petitioner must show that both of these determinations were either based upon an unreasonable determination of the facts, or were contrary to or an unreasonable application of federal law.  28 U.S.C. § 2254(d).

## 2.  State Court Ruling

The PCR court initially rejected all of Petitioner's claims of ineffective assistance as not supported by the record. " (Exhibit M, M.E. 11/15/06 at 2.)  After Petitioner's motion for rehearing, the PCR court conducted an evidentiary hearing at which defense counsel testified. (Exhibit Q, R.T. 4/27/07.) The court again rejected Petitioner's claims, finding that "defendant failed to establish that his attorney's performance was unreasonable under the circumstances or that he suffered any prejudice as a result of his attorney's conduct." (Exhibit R, M.E. 6/19/07.) The state court's findings on individual claims will be addressed hereinafter.

## 2.  Failure to Interview Officers and Investigators

For his first claim of ineffective assistance, Petitioner argues that counsel failed to interview police officers and investigators.  The PCR court did not separately address this claim, and thus the undersigned finds that it was simply disposed of as "not supported by the record." (Exhibit M, M.E. 11/15/06 at 2.)

A habeas petitioner may not leave a court to speculate what evidence a purportedly deficient investigation would have discovered.  In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the petitioner must show specifically what that investigation would have produced.  A petitioner may not simply speculate about what a witness' testimony, but must adduce evidence to show what it would have been. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Here, Petitioner proffers no explanation what information or testimony he believes an interview of officers and investigators would have produced.  Nor does he even specifically identify them.  Nor did he provide such information to the PCR Court.  (*See generally*

Exhibit J, PCR Pet.; Exhibit L, PCR Reply; Exhibit Q, R.T. 4/27/07.)   Under these circumstances, the undersigned finds this claim of ineffectiveness to be without merit.

**4.  Failure to Prepare**

Petitioner complains that trial counsel failed to prepare before and during trial.  Apart from Petitioner's allegations concerning the lack of jail visits (discussed hereinafter), Petitioner does not elaborate in his Petition as to how counsel failed to prepare.

Petitioner has consistently argued that counsel failed to interview the 911 callers.  At the PCR hearing, Petitioner showed that trial counsel had failed to interview people who had called 911 to report the shooting.

> Q.  Okay.  Did you ever make me aware that there possibly could have been other alibi suspect witnesses that - - to come and ask me what would those people say is - - you didn't want to pursue the witnesses, because a blue car was involved and I drove a blue car.  Is that what your are saying?
> A.  [Defense counsel Reece] No.  I'm saying that I didn't see those calls leading to getting an alibi defense.
> Q.  So you didn't investigate?
> A.  I did not investigate the calls.

(Exhibit Q, R.T.  4/27/07 at 20.)

> Q.  And is the statement accurate that you, for whatever reasons, didn't investigate the 911 calls that were in the DR reports?
> A.  Did I make a statement to him about that?
> Q.  No.  You reviewed them, but chose not to investigate them?
> A.  I did not investigate them, no.

(Exhibit Q, R.T.  4/27/07 at 29.)

Even if this Court presumes that such failure was deficient performance, Petitioner must still establish prejudice, *i.e.* a reasonable probability that had counsel interviewed those witnesses there is a reasonable probability that Petitioner would not have been convicted.  However, Petitioner has never produced or proffered any proof showing that such interviews would have produced admissible evidence which would have altered the outcome of the trial.

Petitioner has tendered the letter from Trujillo discussed herein above, asserting she did not recognize Petitioner's photograph as a shooter.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness

- 19 -

1    or on affidavit." *Ashimi*, 932 F.2d at 650.  Despite being encouraged by the PCR court to

2    do so (Exhibit Q, R.T. 4/27/07 at 39, 41), Petitioner has not produced an affidavit from

3    Trujillo.

4         Even if taken as competent evidence, Trujillo's testimony is insufficient to justify

5    relief. In light of the other significant testimony from the involved eyewitnesses (as discussed

6    herein above in connection with Petition's actual innocence claim), the undersigned cannot

7    find that the PCR court's conclusion Petitioner did not establish prejudice was based on an

8    unreasonable determination of the facts or was contrary to or an unreasonable application of

9    federal law. 28 U.S.C. § 2254.

10

11   **5. Failure to Visit Petitioner**

12        Petitioner complains that counsel did not visit him at the jail, and thus could not

13   prepare an adequate defense.  Specifically, Petitioner alleges that "counsel did not see

14   Petitioner for over '400 days' to discuss or prepare his defense." (Petition, Doc. 1 at 7.)

15   Petitioner does not explain this calculation.  The Indictment was issued October 11, 2002.

16   (Exhibit A.)  Trial began April 21, 2003, just 192 days later.

17        The record indicates that counsel had significant contact with Petitioner in the interim,

18   albeit not at the jail.  At the PCR hearing, trial counsel testified that he received Petitioner's

19   file at the end of October, but did not speak to Petitioner until after a hearing some 35 days

20   later, on the 2nd of December.  (Exhibit Q, R.T. 4/27/07 at 15-16, 23.)  In the interim,

21   Petitioner called and asked counsel to file an "O.R." motion, which was done.  (*Id.* at 16-17.)

22   After the December hearing (at which Petitioner was released), he walked and talked with

23   Petitioner "for more than five minutes" about Petitioner's purported alibi.  (*Id.* at 17.)  At the

24   Trial Management Conference on January 1, 2003, they discussed Petitioner's alibi

25   witnesses. Counsel contacted one of the witnesses who said the other would refuse to testify

26   because she was on probation.  (*Id.* at 17-18.)  They had conversations about interviewing

27   other witnesses, and various plea offers.  (*Id.* at 25, 27, 30.)  Petitioner then failed to appear

28   for a second hearing on January 27, and a warrant for his arrest was issued, and he was

rearrested on March 5th. (*Id.* at 17-18, 24, 30-31.) Petitioner proceeded to trial in April. (*Id.* at 25.)

Other than the bare complaint that counsel did not visit him in jail, Petitioner makes no showing that counsel did not adequately communicate with Petitioner.  Nor does Petitioner point to any specific impact on the representation from the lack of jail visits. Counsel did communicate with Petitioner, and pursued the witnesses and strategies discussed with Petitioner.  Counsel utilized other available means of contact, including phone and personal contact at the time of hearings.  Petitioner offers no reason to believe that additional visits in the jail were necessary or would have been productive.

Under these circumstances, the undersigned cannot find deficient performance or prejudice.  This claim is without merit.

**6. Objections**

Petitioner complains that counsel failed to object to the prosecution's attacks on Petitioner's character and falsification of facts.  Petitioner does not elaborate.

The PCR Court rejected this portion of Petitioner's ineffectiveness claim, observing that the "Arizona Court of Appeals determined that most of the evidence at issue would have been admitted at trial because of the Petitioner's untruthful testimony during trial." (Exhibit M, M.E. 11/15/06 at 2.)

On direct appeal, Petitioner challenged various other acts evidence.  The Arizona Court of Appeals observed that counsel "did not object to the admission of any evidence as improper other act evidence."  (Exhibit F, Mem. Dec. 6/14/05 at 4.)  The court went on, however, to analyze Petitioner's claims under Arizona's "fundamental error" review process, and found that none of the opposed evidence resulted in "error going to the foundation of the case, error that takes from defendant a right essential to his defense, and error of such magnitude that defendant could not possibly have received a fair trial." (*Id.* at 5.)  Because this limited form of review does not determine whether the objections would hav been sustained, it renders the holding of the court non-binding for purposes of finding ineffective

assistance.  Nonetheless, the court's rationale is instructive.

Prior Altercation - With regard to testimony by Shawna and Petitioner about prior violence between them, the court found that the prosecution properly impeached statements from both denying altercations between them, by introducing evidence of a prior altercation between them that required police intervention.  (*Id.* at 5-7.)

Second Shooting - With regard to testimony by Shawna and her caretaker, Michelle, of a second shooting incident in which Petitioner allegedly shot at Shawna and her sometime boyfriend, Hector, the Arizona Court of Appeals found that the Shawna's testimony was properly admitted to impeach her claims of Petitioner's nonviolence, and that Michelle's testimony was volunteered by Michelle and was attributed by her to a third party rather than Petitioner.  (*Id.* at 7-9.)

Possession of Firearms - With regard to testimony by Michelle and Petitioner that Petitioner possessed firearms on other occasions, the court found that the testimony by Petitioner was properly obtained to impeach his statements that he never had a weapon, and Michelle's testimony was volunteered as an explanation for her telling the 911 operator that Petitioner had a gun when she had, in fact, not seen him with a gun on that occasion.  (*Id.* at 9-10.)

Drug Usage - With regard to testimony about Petitioner's drug use, the court noted that a woman, Carley, responded to a question about Petitioner being an aggressor by noting that his behavior differed depending on whether he was on drugs.  During cross-examination to show Shawna lied in statements to the police, she denied telling the police she and Petitioner used drugs together.  David, the father of several of Shawna's children, testified he did not want Shawna to have custody because she and Petitioner did drugs together, but admitted he had not seen Petitioner use drugs.  (*Id.* at 10-12.)  The court noted that "Defendant's alleged drug use was not mentioned in closing argument."  (*Id.* at 16, n. 5.) The court concluded: "In the context presented to the jury, evidence of defendant's alleged drug use appears to have had little or no probative value to the determination of defendant's guilt or innocence, the determination of any disputed material issue or the determination of the

1    credibility of any witness." (*Id.* at 11.)

2        <u>Failure to Appear</u> - With regard to Petitioner's absconding in the middle of the

3    prosecution, the court observed that this was elicited to impeach Petitioner's claims to always

4    accepting responsibility for his actions. (*Id.* at 12-13.)

5        Petitioner does not suggest any reason to believe that trial counsel would have been

6    successful at trial in having this evidence excluded, had he timely raised an objection.

7        Arizona Rule of Evidence 404(b) provides:

8            Except as provided in Rule 404(c) [character evidence in sexual
             misconduct cases] evidence of other crimes, wrongs, or acts is not
9            admissible to prove the character of a person in order to show action in
             conformity therewith. It may, however, be admissible for other
10           purposes, such as proof of motive, opportunity, intent, preparation,
             plan, knowledge, identity, or absence of mistake or accident.

11   "Rule 404 only applies when evidence of a prior bad act or crime is introduced in the state's

12   case-in-chief for substantive purposes and to show that the alleged crime or bad act actually

13   occurred." *State v. Cannon*, 148 Ariz. 72, 75, 713 P.2d 273, 276 (1985). When introduced

14   for other purposes, e.g. those listed in the rule and others, including impeachment, the rule

15   has no application. So, for example, "evidence of a prior attempt by the defendant to kill the

16   victim [may be introduced] to rebut the defendant's claim at trial that he would be unable to

17   harm a loved one." *Id.*

18       The evidence of (1) the prior altercation, (2) Shawna's testimony of a second shooting,

19   (3) Petitioner's testimony on firearms, (4) Shawna's testimony on drug usage, and (5)

20   Petitioner's testimony on his failure to appear were all impeachment of a prior statement by

21   the witness.

22       The remaining evidence was either introduced for some other purpose outside Rule

23   404(b), or was ultimately of no moment. Michelle's testimony about the second shooting

24   would not have been prejudicial because she attributed the shooting to a third party.

25   Michelle's testimony about the firearms was not introduced "to prove the character of

26   [Petitioner] in order to show action in conformity therewith," Ariz. R. Evid. 404(b), but to

27   explain her representation to the 911 operator that Petitioner had a gun. Similarly, Carley

28

and David's testimony on drug usage was not introduced "to prove the character of [Petitioner] in order to show action in conformity therewith," Ariz. R. Evid. 404(b). There was no assertion that Petition was using drugs at the time of the offense, or that drugs otherwise contributed to the offense. Moreover, the testimony by Carley was volunteered by her in response to questioning by defense counsel about who was the aggressor between Petitioner and Shawna. (Exhibit F, Mem. Dec. 6/14/05 at 10-11.) The testimony by David was defused by his admission that he had never seen Petitioner use drugs.

Even if the objections would have been successful, failure to raise the objections was not *per se* deficient performance. Good trial counsel will let any number of technical violations of the rules of evidence go without objection. "If counsel reasonably believes that correcting the error will actually cause greater harm to his client, perhaps by creating an unfavorable impression of counsel or the defendant in the eyes of the judge or jury, counsel's failure to object would not constitute deficient performance." *Gordon v. U.S.,* 518 F.3d 1291, 1300 (11th Cir. 2008). Here much of the offending testimony was not obviously elicited by the prosecution's questions, but was interjected by the witness. Thus counsel's only option was to make an after-the-fact objection and attempt to "unring the bell." Doing so would have simply highlighted the offending testimony in the eyes of the jury, with vague hopes that a limiting instruction by the court would actually be heeded in the jurors' deliberations.

The undersigned cannot find deficient performance in counsel's failure to object to the admission of this evidence. Nor can the undersigned find prejudice, given the eyewitness testimony against Petitioner.

Even if the undersigned could find ineffective assistance, the undersigned has found no basis for concluding that the state courts' rejections of the claims were based upon an unreasonable determination of the facts, or were contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d).

Accordingly, Ground Two is without merit.

## F. SUMMARY

Petitioner has procedurally defaulted the portion of his Ground One based on witness recantation, and Petitioner's claims in Ground Three (Competence) were disposed of on independent and adequate state grounds.   Petitioner has failed to show cause and prejudice or actual innocence to avoid the effect of the procedural default and procedural bar. Accordingly, these claims must be dismissed with prejudice.

The portion of Ground One based on actual innocence is not cognizable, and is unsupported.   Ground Two (ineffective assistance) is without merit.   Accordingly, the balance of the Petition is without merit and must be denied.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.   The recommendations if accepted will result in Petitioner's Petition being  resolved adversely to Petitioner.   Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA

should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right **and** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis added).

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein,  the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein,  the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition,  a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the  portion of Ground One founded on recantation of a witness, and all of Ground Three (Competency) of Petitioner's Petition for Writ of Habeas Corpus, filed June 22, 2009 (Doc. 1)   be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of  of Petitioner's Petition for Writ of Habeas Corpus, filed June 22, 2009 (Doc. 1)  be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

1   *Appellate Procedure*, should not be filed until entry of the district court's judgment.

2   However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

3   have fourteen (14) days from the date of service of a copy of this recommendation within

4   which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing

5   Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to

6   file a response to the objections.  Pursuant to *Local Civil Rule 7.2(e)(3)*, unless otherwise

7   permitted by the Court, an objection to a Report and Recommendation shall not exceed ten

8   (10) pages.  Failure to timely file objections to any findings or recommendations of the

9   Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of

10  the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),

11  and will constitute a waiver of a party's right to appellate review of the findings of fact in an

12  order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins*

13  *v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

14

15  DATED: April 28, 2011                    _____

16                                            JAY R. IRWIN
                                             United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28